## ELAM DOLE *versus* JAMES C. STIMPSON.

The defendant offered the plaintiff a certain price for a steam-engine, a part of the money to be paid when the engine should be taken away by the defendant, which was to be done in two or three weeks, and the balance to be secured by a promissory note. The plaintiff accepted the offer, and said, " then you consider the engine to be yours as it is," and the defendant said " yes." The boiler was set in bricks, in the plaintiff's shop, and could not be removed until they were taken away, and the plaintiff was to take them away, which he did, the next week. The defendant told a witness he had bought the engine, and made inquiries on what terms he could get it carried to another place. The bargain was not in writing, and the defendant did not pay or secure any part of the price, and did not take away the engine. It was *held,* that there was no delivery and that the sale was therefore void under the statute of frauds.

ASSUMPSIT to recover the price of a steam-engine, which, at the time of the alleged sale, March 31, 1837, was set in the shop of the plaintiff, at Methuen.

At the trial, before *Wilde* J., it was testified, that after the

defendant had examined the engine, he offered the plaintiff $800 for it, $350 to be paid when he should take it away, which should be in two or three weeks at furthest, and the balance to be secured by the defendant's note, with Mr. Shove as surety, payable in six months ; that the plaintiff accepted the offer, and said to the defendant, " then you consider the engine to be yours as it is," and the defendant said, "yes." This took place in front of the shop, where the engine was. There was no other engine in Methuen.    The plaintiff was to be at no risk in taking down, removing, or loading the engine, but was to take away the bricks in which the boiler was set ; the boiler could not be removed without taking away the bricks. The plaintiff was to give his personal assistance in loading the engine when the defendant should send for it, if requested. The bricks were removed by the plaintiff the following week. It was also testified, that immediately after this interview the defendant called at the shop of the witness and told him that he had bought the engine, and asked on what terms he could get it carried to Salem, and desired the witness to inquire of the teamster in Methuen on what terms he would carry it, and to send the defendant word ; that on inquiry, the teamster said he could not undertake to carry it for three months, on account of the mud ; that the defendant said that if he could not agree for its freight in Methuen, he would send Tapley up for it from Danvers ; that Winchester would come up to help load it, and that he (the defendant) was to take it down and load it.

Tapley testified, that the defendant spoke to him about teaming an engine from Methuen some time in the spring of 1837, asked him if he could do it, and inquired the price. Something also was said about some cedar posts which the witness had to sell, and which the defendant wanted to use in putting up an engine.

It also appeared, that one Carleton had a mortgage on the engine for $300, and that one Frye had a subsequent mortgage for $600 ; that both mortgages were mentioned when the bargain was made ; that Carleton was present, and that the cash payment was required to discharge his mortgage ; that it was then stated that Frye, who was not present, would release his mortgage ; that he still holds the mortgage ; that in June,

Dole<br>v.<br>Stimpson.

Dole
*v.*
Stimpson.

1837, the plaintiff and Frye called upon the defendant to in form him that the plaintiff had full right to sell ; that the defendant said he never disputed the plaintiff's right to sell ; that the plaintiff asked the defendant to take away the engine, as it was in the plaintiff's way, and pay for it ; that the plaintiff asked if the bargain was not fair, and that the defendant said it was a fair one, but that he could not take the engine, it was such hard times ; that it was owing to the times that he did not take it. The defendant gave the same reason for not taking it, to the sheriff, when the writ was served upon him.

The defendant contended that these facts did not show a valid contract, under Revised Stat. *c.* 74, § 4, there being no proof of a delivery of the engine. He also contended, that the existing mortgages, amounting to $900, precluded any property from passing by the contract, the plaintiff having a right to sell only the equity of redemption or right to hold the engine by paying the mortgages, which was of no value.

A nonsuit was entered by consent, subject to the opinion of the whole Court.

*Nov. 7th.*

*Hazen,* for the plaintiff, contended that there was sufficient evidence of a delivery. He said, that no question could arise as to the identity of the article sold ; that the price was fixed ; that the form of a delivery must depend on the nature of the property ; that the plaintiff had incurred expense in taking away the bricks ; that the defendant had examined the engine and therefore could not object to its condition or character ; that there was an acceptance with intention to complete the sale ; and that the statute does not in terms require a delivery, but only an acceptance. *Phillips* v. *Bistolli,* 2 Barn. & Cressw. 511 ; *Chaplin* v. *Rogers,* 1 East, 192 ; *Jewett* v. *Warren,* 12 Mass. R. 300 ; *Searle* v. *Keeves,* 2 Esp. Rep 598 ; *Howe* v. *Palmer,* 3 Barn. & Ald. 321.

The defendant was not deceived in regard to the state of the title, and he admitted the plaintiff's right to sell. The first mortgage was to be discharged by the defendant's first payment, and the second mortgagee was willing to release his mortgage. Atkinson on Titles, 646.

*Proctor,* for the defendant. Something remained to be done by the vendor, to complete the sale, namely, to remove

the bricks in order to put the engine in a condition for delivery. *Riddle* v. *Varnum*, 20 Pick. 283 ; *Macomber* v. *Parker*, 13 Pick. 183 ; 3 Stark. Ev. (4th Amer. edit.) 1640 ; Brown on Sales, 44 ; Chit. Contr. 111 ; *Dutille* v. *Ritchie*, 1 Dallas, 171 ; *Elmore* v. *Stone*, 1 Taunt. 458.

The plaintiff's title was defective. Independently of the statute of frauds, he must have discharged the incumbrances before the defendant would have been liable. 2 Kent's Comm. (3d edit.) 478 ; 2 Stark. Ev. (4th Amer. edit.) 469, note *o* ; *Pasley* v. *Freeman*, 3 T. R. 57 ; Bull. N. P. 30.

Wilde J. delivered the opinion of the Court. The question submitted to the determination of the Court is, whether on the evidence reported, allowing the facts to be correctly stated by the witnesses, there was an executed contract of sale and purchase between the parties, or an executory contract to be completed at a future time. It appears in evidence, that the defendant offered the plaintiff the sum of $ 800 for a steam-engine, and agreed to pay $ 350 when he should take it away ; which was to be in two or three weeks at the furthest, and to give a note, with a Mr. Shove as surety, for the balance, payable in six months. This offer was accepted by the plaintiff, who thereupon said to the defendant, " then you consider the engine to be yours as it is," and the defendant replied " yes." The engine was not delivered to the defendant, but remained in the possession of the plaintiff, who afterwards requested him to take it away, which he declined to do. This and the other evidence in the case, show an agreement for a sale and purchase to be completed at a future time, and not an actual sale. The defendant had no right to take away the engine without first paying the $ 350 and giving his note for the balance, according to his agreement. If the contract had been in writing, the defendant would be liable on his contract, unless he had a right to decline the purchase on account of the plaintiff's defective title. But the agreement was verbal, and so was void by the statute of frauds.

This agreement is very much like the one in *Tempest* v. *Fitzgerald*, 3 Barn. & Ald. 680. There A had agreed to purchase a horse from B, for ready money, and to take him away within a certain time. At the expiration of the time A rode the horse, and gave directions as to its treatment, &c.,

*Nov. 8th.*

but returned it to B's possession to keep for a further time, when he promised to take it away and pay the price. The horse died before A paid the price or took it away. And it was held. there was no acceptance of the horse, within the meaning of the statute of frauds. The case of *Baldey* v. *Parker*, 2 Barn. & Cressw. 37, was decided in the like manner and on facts nearly similar. In that case A had contracted with B for the purchase of sundry goods, some of which A marked with a pencil. Others were measured in his presence, and others he assisted to cut from larger bulks ; and he desired an account of the whole to be sent to his house. A bill of parcels was accordingly sent, together with the goods, when he refused to accept them. Upon these facts it was held, that there was no delivery.

In each of those cases it was urged, and with greater plausibility than it can be urged in this case, that there was evidence tending to show a delivery and acceptance of the property bargained for. There is no such evidence in the case reported. Nothing appears but the mere agreement to purchase. No act was proved that can be construed as an act of delivery. The engine, at the time of the agreement, was attached to the realty, and could not be delivered until separated therefrom. This separation was to be made by the plaintiff; and it is a fundamental principle in the doctrines of sales, that where any thing remains to be done by the vendor, before the goods sold are to be delivered, a present right of property does not vest in the vendee.

Another circumstance was proved at the trial, which has a tendency to show that the contract was not consummated. The $ 350 which the defendant agreed to pay on the delivery of the engine, was intended to be appropriated to the discharge of a mortgage on the engine ; and the defendant had a right to insist that the money should be thus appropriated, and that another mortgage should likewise be discharged, before he would be bound to complete the purchase.

Considering all these circumstances, we think it very clear, that the intended purchase was never completed, and that the defendant's agreement to purchase, being within the statute o' frauds, is not a binding and valid contract.

*Motion to take off the nonsuit overruled.*